IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 09-00634-TOM-11 |
| **BFW LIQUIDATION, LLC f/k/a** | ) | Chapter 11 |
| **BRUNO'S SUPERMARKETS, LLC,** | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **WILLIAM S. KAYE, as Liquidating** | ) | |
| **Trustee of BFW Liquidation, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 11-00062 |
| | ) | |
| v. | ) | |
| | ) | |
| **BARBER MILK, LLC and** | ) | |
| **SOUTHERN FOODS GROUP, LLC** | ) | |
| **d/b/a BROWN'S DAIRY,** | ) | |
| | ) | |
| Defendants. | ) | |

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 09-00634-TOM-11 |
| **BFW LIQUIDATION, LLC f/k/a** | ) | Chapter 11 |
| **BRUNO'S SUPERMARKETS, LLC,** | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **WILLIAM S. KAYE, as Liquidating** | ) | |
| **Trustee of BFW Liquidation, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 11-00071 |

| | )|
|---|---|
| **v.** | ) |
| | ) |
| **MAYFIELD DAIRY FARMS, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

_____

## MEMORANDUM OPINION AND ORDER

These adversary proceedings came before the Court on May 17, 2016, for trial[1] on the Amended Complaints filed by Plaintiff William S. Kaye, as Liquidating Trustee (the "Plaintiff" or the "Trustee") for Bruno's Supermarkets, LLC n/k/a BFW Liquidation, LLC (the "Debtor" or "Bruno's") in two separate adversary proceedings, one against Defendants Barber Milk, LLC ("Barber") and Southern Foods Group, LLC d/b/a Brown's Dairy ("Southern") and the other against Defendant Mayfield Dairy Farms, LLC ("Mayfield," and collectively with Barber and Southern, the "Defendants"). Appearing before the Court were John D. Elrod, attorney for the Trustee; and Mark Ralston and Stephen Porterfield, attorneys for the Defendants. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, As Amended July 17, 1984.[2] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(F).[3]

---

[1] Based on no written objections having been filed and no verbal objections having been voiced at any hearings in this adversary proceeding, all parties and their counsel have implied their consent and thus will be deemed to have consented to entry by the Bankruptcy Court of any and all final orders and judgments in this adversary proceeding.

[2] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[3] 28 U.S.C. §157(b)(2)(F) provides as follows:
> (b)(2) Core proceedings include, but are not limited to–
> …
> (F) proceedings to determine, avoid, or recover preferences [.]

2

This Court has considered the pleadings, arguments of counsel, the exhibits, and the law, and finds and concludes as follows:[4]

### **FINDINGS OF FACTS**[5]

The Debtor filed its bankruptcy case under Chapter 11 of the Bankruptcy Code on February 5, 2009 (the "Petition Date"). The Debtor was a Birmingham, Alabama-based grocery store chain with stores in Alabama and the Florida panhandle. Bruno's operated stores under the Bruno's Supermarkets, FoodMax, and Food World banners.

The Trustee was appointed pursuant to the Debtor's Fourth Amended Chapter 11 Plan of Liquidation, which became effective on October 5, 2009. Thereafter, on January 27, 2011,[6] the Plaintiff filed an adversary complaint, as amended May 1, 2013, against Barber and Southern seeking the avoidance and recovery of $636,018.97 in transfers pursuant to 11 U.S.C. §§ 547 and 550, as well as the disallowance of the general unsecured claim filed by Barber $230,660.78 pursuant to 11 U.S.C. § 502(d). On January 28, 2011, the Plaintiff filed the adversary proceeding against Mayfield likewise seeking the avoidance and recovery of $298,439.15 in transfers and the disallowance of Mayfield's general unsecured claim in the amount of $170,252.20. Prior to the filing of the adversary proceedings, the Plaintiff stipulated with the Defendants that each would have an allowed claim pursuant to 11 U.S.C. § 503(b)(9) (the "503(b)(9) Claims") for goods provided during the twenty days prior to the Petition Date, as follows: Barber, in the amount of

---

[4] This Memorandum Opinion constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[5] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[6] The Debtor's underlying bankruptcy case and all related adversary proceedings were originally assigned to the Hon. Benjamin G. Cohen and re-assigned to this Court in December 2014 due to Judge Cohen's retirement.

3

$103,193.78; Southern, in the amount of $16,468.88; and Mayfield, in the amount of $63,169.21.[7] According to the Pre-trial Brief filed by the Plaintiff, the Barber and Southern 503(b)(9) Claims have been paid. *See* AP 11-00062, Doc. 99. It is unclear whether the Mayfield 503(b)(9) Claim has been paid. *See* AP 11-00071, Doc. 87.

Due to the similarities in the factual allegations and arguments of counsel in these adversary proceedings, the parties agreed that the adversary proceedings should be tried together. Prior to trial, the parties stipulated that the prima facie elements of the preference claim contained in section 547(b) have been met with respect to certain transfers. Per the stipulation between the Plaintiff and Barber and Southern, the following transfers were preferential:

| Check Number | Check Receipt Date | Clear Date | Amount | Net Amount on Barber Milk Acct[8] |
|---|---|---|---|---|
| 324514 | 11/11/2008 | 11/12/2008 | $ 50,072.49 | $ 44,286.36 |
| 325031 | 11/24/2008 | 11/24/2008 | $ 51,931.16 | $ 46,833.65 |
| 325518 | 12/1/2008 | 12/1/2008 | $ 49,636.93 | $ 43,358.33 |
| 326026 | 12/3/2008 | 12/5/2008 | $ 49,421.06 | $ 43,298.26 |
| 326495 | 12/9/2008 | 12/9/2008 | $ 56,062.26 | $ 49,520.99 |
| 326978 | 12/11/2008 | 12/12/2008 | $ 51,429.23 | $ 46,093.09 |
| 327475 | 12/31/2008 | 12/31/2008 | $ 67,742.89 | $ 58,787.46 |
| 327980 | 1/6/2009 | 1/6/2009 | $ 68,605.07 | $ 59,597.12 |
| 328415 | 1/10/2009 | 1/12/2009 | $ 63,452.16 | $ 54,074.40 |
| 328918 | 1/16/2009 | 1/16/2009 | $ 60,515.42 | $ 52,102.35 |
| 329365 | 2/3/2009 | 2/4/2009 | $ 67,150.30 | $ 58,735.96 |
| | | Total | $ 636,018.97 | $ 556,687.97 |

---

[7] The filed Stipulations between the Plaintiff and the Defendants specified that the Plaintiffs did not waive any claims that could be asserted by the Plaintiff against the Defendants. *See* BK Docs. 2387, 2386, and 2529.
[8] This is the net amount retained by Barber after deducting the transfers Barber made to Southern (see chart of transfers from Barber to Southern, page 5, infra).

4

Case 11-00071-TOM    Doc 102    Filed 12/20/16    Entered 12/20/16 12:19:33    Desc Main
Document    Page 4 of 15

*See* AP 11-00062, Doc. 108.  The checks referenced in the chart above were made payable to Barber and cashed by Barber.  Barber then made an intercompany transfer to Southern, which is one of Barber's affiliates.   The amounts of those intercompany transfers are as follows:

| Check Number | Amount Transferred to Southern |
|---|---|
| 324514 | $ 5,786.13 |
| 325031 | $ 5,097.51 |
| 325518 | $ 6,278.60 |
| 326026 | $ 6,122.80 |
| 326495 | $ 6,541.27 |
| 326978 | $ 5,336.14 |
| 327475 | $ 8,955.43 |
| 327980 | $ 9,007.95 |
| 328415 | $ 9,377.75 |
| 328918 | $ 8,413.07 |
| 329365 | $ 8,414.34 |
|  | **$ 79,330.99** |

*See id.*

Bruno's asserts that, with regard to the funds Barber received from Bruno's and transferred to Southern, Barber is liable along with Southern, pursuant to section 550(a), for any preferential transfers that may be recovered by the Trustee.  While Barber disagrees as to that liability, counsel for Barber stipulated at trial that should Southern not satisfy any obligation to Bruno's rendered as a final judgment, then Barber would indemnify the Trustee.

Per the stipulation between the Plaintiff and Mayfield, these transfers from Bruno's to Mayfield were preferential:

5

| Check Number | Check Receipt Date | Check Clear Date | Amount Paid to Mayfield |
|---|---|---|---|
| 324683 | 11/6/2008 | 11/7/2008 | $ 2,893.11 |
| 324682 | 11/10/2008 | 11/12/2008 | $ 20,776.24 |
| 325164 | 11/13/2008 | 11/14/2008 | $ 21,233.59 |
| 325165 | 11/24/2008 | 11/25/2008 | $ 2,547.34 |
| 325639 | 12/1/2008 | 12/2/2008 | $ 41,832.26 |
| 326157 | 12/5/2008 | 12/8/2008 | $ 1,709.65 |
| 325640 | 12/5/2008 | 12/8/2008 | $ 3,794.01 |
| 326156 | 12/8/2008 | 12/8/2008 | $ 11,513.89 |
| 326631 | 12/10/2008 | 12/11/2008 | $ 25,411.81 |
| 326632 | 12/11/2008 | 12/12/2008 | $ 2,898.19 |
| 327105 | 12/15/2008 | 12/15/2008 | $ 18,714.12 |
| 327106 | 12/15/2008 | 12/16/2008 | $ 3,358.80 |
| 327605 | 1/5/2009 | 1/5/2009 | $ 3,929.82 |
| 327604 | 1/5/2009 | 1/5/2009 | $ 46,203.79 |
| 328078 | 1/6/2009 | 1/7/2009 | $ 1,509.71 |
| 328077 | 1/6/2009 | 1/7/2009 | $ 9,882.15 |
| 328551 | 1/12/2009 | 1/12/2009 | $ 2,849.59 |
| 329025 | 1/12/2009 | 1/12/2009 | $ 3,515.51 |
| 329024 | 1/12/2009 | 1/12/2009 | $ 16,873.24 |
| 328550 | 1/12/2009 | 1/12/2009 | $ 53,174.30 |
| 329494 | 2/3/2009 | 2/4/2009 | $ 3,818.03 |
| | | **Total** | **$ 298,439.15** |

*See* AP 11-00071, Doc. 97.

The parties further stipulated that the only issue that remained for trial was to what extent the new value defense of section 547(c)(4) applies.[9] The Trustee contends that only subsequent new value that remains "unpaid" may be used to shield preferential transfers, while the Defendants assert that they should be given credit for new value whether it remains "paid" or "unpaid." The Defendants further assert that the new value determination should be made as of the Debtor's filing date and thus the payments made by the Trustee on account of the Defendants' 503(b)(9) claims should have no effect on the new value determination. At the beginning of the trial, the parties introduced into evidence Joint Exhibit A in which they set forth the values they agreed would be the Defendants' preference liabilities depending on how this Court ruled on the questions of whether new value must remain unpaid and the effect of the payment of the section 503(b)(9) claims. The stipulation reached at trial is as follows:

|  | **Paid & Unpaid New Value**[10] | **No Paid 503(b)(9) Amounts**[11] | **No Paid Prepetition Amounts**[12] | **No Paid New Value**[13] |
|---|---|---|---|---|
| Barber Liability | $77,552.34 | $178,716 | $238,775 | $341,272 |
| Southern Liability | $14,484 | $30,596 | $37,152 | $53,229 |
| Mayfield Liability | $7,715 | $77,071 | $95,593 | $167,187 |

---

[9] Southern previously asserted a statute of limitations defense but withdrew that defense prior to trial.
[10] Under this scenario, both paid and unpaid new value can be utilized by the Defendant to reduce its liability.
[11] Under this scenario, paid new value can be utilized by the Defendant excepting amounts which were paid by the Trustee via the satisfaction of the 503(b)(9) Claim.
[12] Under this scenario, paid new value can be utilized by the Defendant excepting amounts which were paid by the Debtor prepetition, i.e. the paid 503(b)(9) Claim amounts can be utilized to reduce the Defendant's liability.
[13] Under this scenario, no paid new value, whether paid prior to or after the Petition Date, can be utilized to reduce the Defendant's liability.

7

# CONCLUSIONS OF LAW

## I.  *Prima facie* case

Because the parties have stipulated that the Plaintiff has satisfied his burden of proof with respect to each of the elements of section 547(b) of the Bankruptcy Code, the Plaintiff's *prima facie* case has been satisfied and the burden of proof shifts to the Defendants regarding their asserted subsequent new value defense.

## II.  The Defendants' asserted subsequent new value defense

### a.  Burden of proof for defenses under section 547(c)

Pursuant to section 547(g) of the Bankruptcy Code, the Defendants have the burden of proof regarding its asserted defenses. *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563, 1565 n.4 (11th Cir. 1986). The creditor asserting a defense must prove each element of its defense by a preponderance of the evidence. *Jones v. United Sav. and Loan Ass'n (In re U.S.A. Inns of Eureka Springs, Arkansas Inc.*,) 9 F.3d 680, 682 (8th Cir. 1993).

### b.  Subsequent new value defense

The Defendant claims a subsequent new value defense under section 547(c)(4) of the Bankruptcy Code. That section provides that:

> (c) The trustee may not avoid under this section a transfer--
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
> (A) not secured by an otherwise unavoidable security interest; and
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor[.]

The Plaintiff and the Defendants disagree over how this defense should be applied. The Plaintiff requests that the Court adopt the application pronounced by the Eleventh Circuit Court of Appeals in the case *Charisma Investment Co., N.V. v. Airport Systems, Inc. (In re Jet Florida System, Inc.)*,

8

841 F.2d 1082 (11th Cir. 1988). In that decision, the Eleventh Circuit held that:

> This section has generally been read to require: (1) that the creditor must have extended the new value after receiving the challenged payments, (2) that the new value must have been unsecured, and (3) that *the new value must remain unpaid*.

*Id*. at 1083 (emphasis added). The court went on to find:

> In applying [the section 547(a)(2)] definition of new value to the subsequent advance exception, courts have consistently looked to the principal policy objectives underlying the preference provisions of the Bankruptcy Code. The first objective is to encourage creditors to continue extending credit to financially troubled entities while discouraging a panic-stricken race to the courthouse. Another related objective of this section is to promote equality of treatment among creditors. The subsequent advance exception promotes these general policy objectives "because its utility is limited to the extent to which the estate was enhanced by the creditor's subsequent advances during the preference period." 4 Collier on Bankruptcy, ¶ 547.12, at 547-49 n. 5 (15th ed. 1987)[.] Thus, courts have generally required a transfer which fits within the subsequent advance exception to provide the debtor with a material benefit. This focus upon whether a material benefit has been conferred has been explained in terms of insulating a preferential transfer to a particular creditor to the extent that that creditor thereafter replenishes the estate. In such a situation, the creditor pool would not be harmed to the extent of the offset and the fundamental goal of equality of distribution would be preserved.

*Id*. at 1083-84 (some internal citations omitted). In *Jet Florida*, the creditor, a landlord, contended that the debtor's ability to use property that it had leased from the creditor should be considered new value that would prevent the trustee from recovering over $11,000 that the creditor had received during the preference period. *Id*. at 1082-83. The Eleventh Circuit affirmed the district court, which in turn had affirmed the bankruptcy court's conclusion that the landlord had not extended new value. *Id*. at 1084. The court opined that if the debtor had made use of the leased property the creditor's forbearance may have qualified as new value; however, as the district court had remarked, the lease had not replenished the estate but instead was "a financial drain." *Id*. In concluding that the creditor had not provided new value, the Eleventh Circuit did not need to closely examine the second and third elements of the three part test - the new value had been

9

unsecured and had remained unpaid - because those elements "had concededly been satisfied." *Id*. at 1083.

Several other courts in the Eleventh Circuit have recited the three-part test without the occasion to analyze the "remains unpaid" prong as it was not an issue in those cases. *See Alfa Fire Ins. Co. v Memory (In re Martin)*, 184 B.R. 985, 995 (M.D. Ala. 1995) (Albritton, J.) (citing *Jet Florida*), aff'd 101 F.3d 708 (11th Cir. 1996); *Bender Shipbuilding & Repair Co., Inc. v. Oil Recovery Co. Inc. of Alabama (In re Bender Shipbuilding and Repair Co., Inc.)*, 479 B.R. 899, 903 (Bankr. S. D. Ala. 2012) (Mahoney, J.) (citing *Jet Florida*); *Crews v. Nat'l Coating, Inc. (In re Nat'l Aerospace, Inc.)*, 219 B.R. 625, 629 (Bankr. M.D. Fla. 1998) (Proctor, J.) (citing *Jet Florida*); *Jones v. Ryder Integrated Logistics, Inc. (In re Jotan, Inc.)*, 264 B.R. 735, 754–55 (Bankr. M.D. Fla. 2001) (Funk, J.); *Moltech Power Sys.*, 326 B.R. at 183–84 (citing *Jet Florida*); *JSL Chem. Corp.*, 424 B.R. at 583; *Kelley v. McCormack (In re Mitchell)*, 548 B.R. 862, 895-96 (Bankr. M.D. Ga. 2016).

In other cases, the "remains unpaid" prong was a contested issue. Some courts cited to *Jet Florida* as controlling law that new value must remain unpaid, agreeing that such a requirement furthered the policy objectives behind section 547(c)(4). *See Braniff, Inc. v. Sundstrand Data Control, Inc. (In re Braniff, Inc.)*, 154 B.R. 773, 783–85 (Bankr. M.D. Fla. 1993) (Corcoran, J.); *Welt v. Samsung Semiconductor, Inc. (In re All American Semiconductor, Inc.)*, AP No. 09-01443, 2012 WL 3229295, at *4-5 (Bankr. S.D. Fla. Aug. 6, 2012); *Johnson v. Smith Bros. Oil Co., Inc. (In re Empire Pipe and Dev., Inc.)*, 152 B.R. 1012, 1015 (Bankr. M.D. Fla. 1993) (Paskay, J.); *Drake v. Peeples (In re Topgallant Lines, Inc.)*, BK No. 89-41996, AP No. 91-4141, 1996 WL 33366600, at *11 (Bankr. S.D. Ga. Feb. 29, 1996) (Davis, J.) (finding that the court was bound by *Jet Florida* but not addressing policy considerations).

However, one court within this district held that new value did not have to remain unpaid to be utilized under section 547(c)(4). *HB Logistics, LLC v. Pilot Travel Centers, LLC (In re HB Logistics, LLC)*, BK No. 11-82362-JAC-11, AP No. 12-80124, 2013 WL 6542866 (Bankr. N.D. Ala. Dec. 13, 2013) (Caddell, J.) (ret.). According to Judge Caddell:

> Although the Eleventh Circuit has been cited as having adopted the remains unpaid approach, a Georgia bankruptcy court [*TI Acquisition, LLC v. Southern Polymer, Inc. (In re TI Acquisitions, LLC)*, 429 B.R. 377, 383 (Bankr. N.D. Ga. 2010)] recently called into doubt whether the Eleventh Circuit has officially adopted the approach. Instead, the court explained that the language used by the Eleventh Circuit in *Jet Florida System, Inc.* is "best viewed as shorthand for the text of § 547(c)(4)." Other courts and commentators have explained that the Eleventh Circuit's reference to "remains unpaid" was stated in dicta as the only issue before the court was whether a landlord had provided new value to the debtor by continuing to make a leased premises available to the debtor after the debtor's default.

*HB Logistics*, 2013 WL 6542866 at *2. Judge Caddell observed that *Jet Florida* "involved a single transfer and the case is, therefore, not clearly on point with the facts of the case before the Court which involves numerous transfers on a 'running account' basis between the parties." *Id*. Judge Caddell noted that under the Bankruptcy Act of 1898, the section dealing with preferential transfers "limited the amount of the new value setoff to 'such new credit remaining unpaid.'" *Id*. (citing Travis Powers, *Inadequate Shorthand: The Circuit Courts are Split as to Whether There Is a "Remains Unpaid" Requirement in the New Value Exception to Preference Liability*, 22 J. Bankr. L. & Prac. 4 Art. 5 (2013)). He further noted that under the Bankruptcy Code "§ 547(c)(4) only deprives a creditor of the new value exception 'to the extent that (1) new value is secured by an otherwise unavoidable security interest; or (2) after new value is advanced, the debtor makes a transfer to the creditor that is otherwise unavoidable.'" *Id*. In determining that the creditor "is entitled to assert the subsequent new value defense under § 547(c)(4) to the extent the new value has not been paid by an otherwise unavoidable transfer," he concluded:

11

> To allow the debtor to both avoid the preference and recover the payment for the new value provided by [the creditor] from which the debtor materially benefitted while denying [the creditor] the new value defense would not further the principal policy objections underlying the preference provisions of the Bankruptcy Code: (1) "to encourage creditors to continue extending credit to financially troubled entities while discouraging a panic-stricken race to the courthouse," and (2) "to promote equality of treatment among creditors."

*Id*. at *3. *See also Wahoski v. American & Efrid, Inc. (In re Pillowtex Corp.)*, 416 B.R. 123, 129-30 (Bankr. D. Del. 2009) ("[T]he trustee should not be able to assert the new value was paid if the trustee is asserting that the paying transaction was in fact a preference which the trustee can avoid. By doing so, the trustee will be able to eliminate the effect of the payment for the new value when he recaptures the preferential transfer.") (quoting *Boyd v. The Water Doctor (In re Check Reporting Services, Inc.)*, 140 B.R. 425, 433 (Bankr. W.D. Mich. 1992)).

While Judge Caddell's reasoning (and that of other courts that have concluded new value does not have to remain unpaid) may be persuasive to some courts, this Court is not inclined to follow *HB Logistics* without clear direction from the Eleventh Circuit Court of Appeals. As in *HB Logistics*, the facts in this case may differ from those in *Jet Florida* because multiple transactions between the parties took place within the preference period; thus, it could be argued that *Jet Florida* is not directly on point in the case before this Court. It is also possible that if the Eleventh Circuit in *Jet Florida* had the occasion to evaluate the "remains unpaid" prong it would have concluded that new value had to be unpaid, or perhaps the court would have determined otherwise. Nonetheless, the Eleventh Circuit did identify a three-part test for determining when the new value defense is applicable and this Court will strictly apply that test to the facts of this case. The Defendants are entitled to the new value defense only to the extent that the new value they extended remains unpaid.

    c. **Section 503(b)(9) claims**

12

The Defendants argue that the new value determination should be made as of the bankruptcy filing date and thus any payments on section 503(b)(9) administrative expense claims should not factor into the subsequent new value calculations. While there is little case law in the Eleventh Circuit addressing the effect of a section 503(b)(9) claim on the new value defense, one court has held that a creditor whose section 503(b)(9) claim was to be paid in full was not entitled to the new value defense with regard to the goods giving rise to the claim. *TI Acquisition*, 429 B.R. at 385-86. In *In re TI Acquisition, LLC v. Southern Polymer, Inc. (In re TI Acquisition, LLC)*, the creditor shipped goods to the debtor within 20 days prior to the bankruptcy filing date and did not receive payment for the goods prepetition. *Id*. at 378. The court allowed the creditor's section 503(b)(9) claim, which was to be paid in full; however, payment on the claim was deferred pending the court's ruling on the debtor's adversary proceeding seeking to recover alleged preferential transfers from the creditor. *Id*. at 378-79. In determining that the creditor could not both assert the subsequent new value defense as well as receive payment on the section 503(b)(9) claim, the court reasoned:

> Denying a creditor the new value defense when the creditor's § 503(b)(9) claim is paid in full and is for the same goods for which the creditor seeks new value is the best way to foster the policies behind the new value defense. The new value defense may encourage the creditor to continue extending credit to a financially troubled entity and the creditor is rewarded with the full payment of its claims. Secondly, providing a creditor with full payment of its § 503(b)(9) administrative claim and allowing the estate to recover preference payments in full is the best way to promote the equal treatment of creditors because it gives the § 503(b)(9) credit full value for its claim, but only does so one time.

*Id*. at 385-86. In the present case, as explained above, this Court has already concluded that Eleventh Circuit Court of Appeals precedent indicates that new value must remain unpaid. Absent further direction from the Eleventh Circuit, it appears to this Court that it is inappropriate to distinguish between whether payment of the new value was made pre- or post-petition.

As noted above, the parties stipulated that the Defendants' exposure, net of unpaid new

13

value, is as follows:

> Barber: $341,272
>
> Southern: $53,229
>
> Mayfield: $167,187

Because the Court has determined that paid new value of any nature cannot be used by the Defendants to reduce their liability, the Court hereby rules that judgment should be entered against Barber in the amount of $341,272; against Southern in the amount of $53,229; and against Mayfield in the amount of $167,187. A separate judgment consistent with this Memorandum Opinion will be entered. Therefore, it is

**ORDERED, ADJUDGED, and DECREED** that the Barber Transfers are avoidable in the amount of $341,272 under section 547(b) of the Bankruptcy Code, and pursuant to section 550 of the Bankruptcy Code, the amount of $341,272 is recoverable against Barber and a judgment in favor of Bruno's and against Barber shall be entered. Barber's general unsecured claim filed in Bruno's bankruptcy case is due to be disallowed until the judgment against Barber is satisfied. Barber shall have leave to file an amended claim within 60 days of the date of the satisfaction of the judgment against it. It is further

**ORDERED, ADJUDGED, and DECREED** that the Southern Transfers are avoidable in the amount of $53,229 under section 547(b) of the Bankruptcy Code, and pursuant to section 550 of the Bankruptcy Code, the amount of $53,229 is recoverable against Southern and a judgment in favor of Bruno's and against Southern shall be entered. Further, based on the parties' stipulation, Barber shall indemnify Bruno's as to any amount of the judgment unpaid by Southern. In the event that Southern has filed a general unsecured claim in Bruno's bankruptcy case, such claim is due to be disallowed until the judgment against Southern is satisfied. If a general unsecured claim

has been filed, Southern shall have leave to file an amended claim within 60 days of the date of the satisfaction of the judgment against it. It is further

**ORDERED, ADJUDGED, and DECREED** that the Mayfield Transfers are avoidable in the amount of $167,187 under section 547(b) of the Bankruptcy Code, and pursuant to section 550 of the Bankruptcy Code, the amount of $167,187 is recoverable against Mayfield and a judgment in favor of Bruno's and against Mayfield shall be entered. Mayfield's general unsecured claim filed in Bruno's bankruptcy case is due to be disallowed until the judgment against Mayfield is satisfied. Mayfield shall have leave to file an amended claim within 60 days of the date of the satisfaction of the judgment against it.

Dated: December 20, 2016 /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge


xc: John D. Elrod, Counsel for the Trustee
Mark Ralston and Stephen Porterfield, Counsel for the Defendants